UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: TIMOTHY and KIMBERLY BURGESON,

        Debtors,

                                            Case No. 05-71312
                                            HON. GEORGE CARAM STEEH

GIGLIOTTI & ASSOCIATES, P.L.L.C.,

        Appellants,                 BANKRUPTCY # 04-71998-MBM

vs.

ESTATE OF TIMOTHY and KIMBERLY BURGESON,

        Appellees.
_____/

OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S MARCH 25, 2005 OPINION

        Gigliotti & Associates, P.L.L.C. ("Gigliotti") appeals from parts of a March 25, 2005 Opinion issued by Bankruptcy Judge Marci B. McIvor reducing Gigliotti's requested costs and fees by $1,366[1]. For the reasons set forth below, the challenged March 25, 2005 Opinion is AFFIRMED.

**I. Jurisdiction and Standard of Review**

        This Court has jurisdiction to hear this appeal from the bankruptcy court's final order. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo. *DBH Ltd., Inc, v. Barrons (In re DBH Ltd., Inc.)*, 23 Fed. Appx. 422, 423 (6th Cir. 2001) (citing *Wesbanco Bank Barnesville v.*

---

[1] Neither Appellees nor the Trustee have filed a Response Brief in this case.

*Rafoth (In re Baker & Getty Fin. Servs., Inc.)*,106 F.3d 1255, 1259 (6th Cir. 1997). A district court may "affirm, modify, or reverse a bankruptcy judge's order, or decree or remand with instructions for further proceedings." Bankruptcy Rule 8013.

**II. Background**

On November 10, 2004, Debtors filed a joint voluntary Chapter 13 bankruptcy petition. It was the third petition[2] filed by Debtors within 14 months, but the first in which they were represented by Gigliotti. Rather than dismissing Debtors' bankruptcy petition on January 27, 2005, the bankruptcy court adjourned the first confirmation hearing to allow Debtors time to improve their payment history. A plan was confirmed at the second confirmation hearing on February 11, 2005.

Afterwards Gigliotti filed an application for an Order Approving Attorney Fees and Expenses ("fee application") seeking $5,581.23, to which the Trustee objected. The Trustee objected to some expenses and to the overall fees requested by Gigliotti as being unreasonable where $1,800 is the amount routinely allowed in Chapter 13 proceedings in the Eastern District of Michigan. Specifically, the Trustee enumerated objections to: (1) all time billed for Debtors' Motion to Excuse Plan Payments because the motion was denied and thus produced no benefit to the estate, (2) all time billed on December 10, 2004 because it appears to duplicate the December 9, 2004 entry, (3) all time billed for phone calls to Debtors due to their clerical nature, (4) excessive time for

---

[2] Debtors' first petition was dismissed on December 12, 2003 without a confirmed plan. The second petition was dismissed on August 2, 2004 after Debtors' failure to make payments on a plan that was confirmed on March 25, 2004.

attending a "341 Meeting of Creditors hearing including drive time," calculating payment due dates, drafting a response to a creditor's motion, attending a status conference and contested docket for the second confirmation hearing, and writing letters to clients and reviewing files, (5) excessive time billed for preparation of the fee application, and (6) all expenses for a courier fee because it is an overhead expense.

A hearing was held on the Trustee's objections on March 17, 2005 before the Honorable Marci B. McIvor. After hearing oral arguments from both parties and taking the matter under advisement, Judge McIvor issued an Opinion on March 25, 2005 sustaining the objections in part and reducing Gigliotti's attorney fees by $1,235 for services rendered on January 27, 2005; $101 for preparation of the fee application; and $30 for expenses. Gigliotti appeals the reduction of hours for professional services and fee application preparation, but not the denial of expenses in the amount of $30, which was for a courier fee that is properly considered to be non-chargeable overhead. *See In re Woodward East Project, Inc.*, 195 B.R. 372 (Bankr. E.D. Mich. 1996).

**III. Analysis**

Gigliotti argues the bankruptcy court erred in interpreting and applying the various factors to be considered in determining allowable compensation. The issues on appeal are (A) whether the bankruptcy court erred in reducing Gigliotti's time for services rendered in relation to the first confirmation hearing on January 27, 2005 that was adjourned, (B) whether the bankruptcy court erred in limiting the amount allowed to Gigliotti for preparation of the fee application to 5% of the total fees requested, and (C) whether the bankruptcy court abused its discretion by not allowing Gigliotti to

3

adequately address the Trustee's specific objections to the fee application at the hearing on March 17, 2005.

**A. Reduction of Hours for Professional Services Rendered on January 27, 2005**

Gigliotti contends that an overall reading of the bankruptcy court's opinion gives the impression that the court employed the "normal and customary" standard rather than the lodestar method in determining reasonable fees for services rendered on January 27, 2005. Gigliotti bases this argument on three points (1) a footnote in the opinion from the bankruptcy court referring to $1,800 as the standard fee for a Chapter 13 case, (2) a statement in the opinion by the bankruptcy court that, "The purpose of bankruptcy is not to serve as a fund for payment of professional fees. Instead, the purpose is to maximize the estate for distribution to creditors," and (3) a failure to articulate any "analysis or rational" for reducing compensation.

In regard to Gigliotti's first argument, this Court finds that just because the bankruptcy judge stated $1,800 is a standard fee for Chapter 13 cases in the district does not imply that a "normal and customary" standard was employed, especially where the judge awarded fees well in excess of $1,800[3]. In the proper context, the reference to a standard fee merely highlights Gigliotti's own failure to satisfy the burden of proof by adequately justifying the fee request. *See In re Gulf Corp.*, 639 F.2d 1197, 1207 (5th Cir. 1981). Furthermore, the bankruptcy court correctly identified the lodestar method as the appropriate legal standard for applying the requirements of Bankruptcy Code § 330(a) which codifies the criteria for evaluating fee requests. *See In re Boddy*, 950 F.2d

---

[3] Gigliotti was awarded $4,215.23 compensation.

334, 337 (6th Cir. 1991). Giglioti fails to explain why any of the factors identified by the bankruptcy court do not support finding the number of hours for which compensation was requested to be unreasonable.

Nevertheless, Gigliotti argues that the bankruptcy court arbitrarily reduced the requested compensation for services on January 27, 2005, from 7.5 hours to 1.0 hour when actual time spent by the attorney is clearly documented. But the bankruptcy court, citing *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D.Ky. 1996), correctly noted that attorneys are not entitled to compensation merely because time recorded was actually expended. Thus Gigliotti may not rely on time entries as evidence of the reasonableness of the time expended. Even if a court finds a particular service was necessary, the time actually expended and/or the rates[4] charged may be found to be unreasonable. *See In re Atwell*, 148 B.R. 483, 488 (W.D. Ky. 1993) (noting reasonableness of hours expended must be evaluated with great care to ensure that attorneys are not compensated for their slowness or for any time spent on projects of little or no benefit to the estate); 11 U.S.C.A. § 330(a)(1)(A) (stating the court may award "reasonable compensation for actual, necessary services rendered").

By lumping together travel time, preparation time, and other services that totaled 7.5 hours, Gigliotti made it difficult to ascertain the reasonableness of the time found to be excessive[5]. Although there are other entries that may also have properly been found

---

[4] The bankruptcy court accepted the $190 hourly rate for Antonia Skatikat on the January 27, 2005 entry and others, as well as entries with a $220 hourly rate for Paul Gigliotti. In oral argument, however, the Trustee asserted a $190 hourly rate was too high.

[5] In its argument on appeal Gigliotti again fails to justify the reasonableness of the time requested in this entry. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d

to be excessive[6], this Court does not agree with Gigliotti that the bankruptcy court inappropriately considered that $1,800 is the customary fee or arbitrarily reduced the time allowed.

The Court also disagrees with Gigliotti's second argument, that statements in the opinion from the bankruptcy court that, "The purpose of bankruptcy is not to serve as a fund for payment of professional fees," and "Instead, the purpose is to maximize the estate for distribution to creditors," makes the ruling legally erroneous. Gigliotti confuses Judge McIvor's statement regarding the purpose of bankruptcy proceedings in general for a statement regarding Gigliotti's specific duty to Debtors.

In fact, it is clear from reading the opinion that the bankruptcy court agreed with Gigliotti's assertion that its obligation was to represent the interests of the Chapter 13 Debtors. The Court notes Judge McIvor overruled the Trustee's objection regarding fees

---

253, 259 (3d Cir. 1995) (finding just as competitive pricing considerations force non-bankruptcy professionals to review bills for charges that should be reduced, estate-compensated professionals need to exercise "billing judgment," and if they have not done so, then the court should when reviewing their fee applications); *Ford Motor Co. v. Lloyd Design Corp.*, No. 00-72734, 2002 U.S. Dist. LEXIS 17024, at *24 (E.D. Mich. May 22, 2002) (reducing fees for travel time inappropriately billed at professional rate). Other bankruptcy courts have entirely stricken lumped together time entries. *In re Fry*, 271 B.R. 596, 603 (Bankr. C.D. Ill. 2001) (Striking entry because lumping services together makes it impossible to determine reasonableness of claim). The 6th Circuit has allowed a reduction in fees for lumped entries. *Ford Motor Co.*, 2002 U.S. Dist. LEXIS 17024, at *15.

[6] Gigliotti has numerous 0.2 hour entries for letters. Some are of a type for which other courts have found 0.2 hours to be excessive due to the routine nature of the task. *E.g. In re Fry*, 271 B.R. 596, 603-05 (Bankr. C.D. Ill., 2001). Other entries, such as "Letter to Clients" on 12/1/2004 provide no description of the purpose of the service and would properly be stricken because there is no basis at all for determining whether the service was necessary or if the amount of time expended was reasonable. *Id.* at 603; *In re Garcia*, 317 B.R. 810, 817 (Bankr. S.D. Cal. 2004) (stating the court cannot award compensation where time entries lack specificity).

Gigliotti requested in relation to Debtors' Motion to Excuse Plan Payments. Although the Trustee argued that since the motion was denied and thus produced no benefit to the estate it should not be allowed, the bankruptcy court found that an attorney should not be discouraged from bringing a motion in good faith that would benefit the estate simply because the motion may ultimately be denied.

In regard to the third argument, that reasons for reducing the hours were not articulated, Gigliotti is correct that bankruptcy courts are required to explain reasons for reducing a fee award. *See Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 435 (6th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *In re Sheldon Bond*, 249 B.R. 891, 898 (C.D. Ill. 2000) (finding bankruptcy court has the obligation to review the fee request and recite in detail why specific fees are denied). It seems, however, that Gigliotti confuses the issue of whether a particular service is necessary with the issue of whether the time requested for performing the service is reasonable.

In stating the fees are excessive the bankruptcy court clearly concluded they are unreasonable, but did not, as Gigliotti seems to argue, find the services were unnecessary. While a review of the bankruptcy court's reduction of the time requested by Gigliotti for services performed on January 27, 2005 would benefit from a more detailed explanation, it is clear that the decision was based on factors the bankruptcy court listed in discussing the standard for awarding fees. The bankruptcy court cited *In re General Oil Distributors, Inc.*, 51 B.R. 794 (E.D.N.Y. 1985), which noted eight factors courts frequently include in discussions analyzing fee requests[7].

---

[7] The factors are (1) the nature of the services rendered, (2) the difficulties and complexities encountered, (3) the results achieved, (4) the size of the estate and the

In regard to the first factor, the nature of the services rendered, and the second factor, the difficulties and complexities encountered, the bankruptcy court was not clearly erroneous in finding this was "a fairly typical Chapter 13 case, without any unusual issues or complex litigation." As for the third factor, the results achieved, the bankruptcy court noted that the first hearing did not result in confirmation of a plan.

This Court finds the bankruptcy court applied the lodestar analysis, which is the correct legal standard, and the bankruptcy court was not clearly erroneous in finding 7.5 hours for Gigliotti's services on January 27, 2005 to be excessive, and reducing the time allowed to 1 hour in light of the factors discussed.

**B. Use of 5% Total Compensation as Limit for Preparation of Fee Application**

Gigliotti argues that the bankruptcy court's reduction of compensation to $101 for preparation of the fee application, based on a limitation of 5% of Gigliotti's total requested compensation is erroneous, and not supported by law. Gigliotti cites *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985) [hereinafter *Nucorp*], in support of the argument that fee applications in bankruptcy cases are much more detailed and time consuming than fee applications submitted in other types of cases, and that the time spent preparing the fee application in this case should be compensated as actual and necessary without any arbitrary percentage limitation.

---

burden it can safely bear, (5) the duplication of services, (6) professional standing, ability, and experience of the applicant, (7) fairness to each applicant, and (8) the cost of comparable services other than for a bankruptcy case. This list is not exclusive and all of these factors need not be discussed since the Sixth Circuit expressly rejects a "checklist approach to fee determinations." *Murphy v. Int'l Union of Operating Engineers, Local 18*, 774 F.2d 114, 128 (6th Cir. 1985).

In fact, *Nucorp* does not address the manner in which a bankruptcy court should assess the reasonableness of a time entry for preparation of a fee application. It simply held that "bankruptcy counsel are entitled to compensation for the time and effort spent in preparing fee applications," and the case was remanded to the district court for a determination of whether the amount requested was reasonable. *Id.* at 662-63. Notably, the fee application in *Nucorp* was from a complicated Chapter 11 case that took place over six months and involved several groups of professionals. *Id.* at 656, 659 n.3.

Gigliotti has failed to explain how the fee application in this case was more difficult than for a typical Chapter 13 case, or its own invoice for a non-bankruptcy client for which Gigliotti presumably would not bill the client. Furthermore, Gigliotti was not completely denied compensation, but denied an amount greater than 5% of the total fees requested. *Cf. George Carlson and Assoc's v. United States Bankr.* (*In re Zamora*), 251 B.R. 591 (D. Colo. 2000), *aff'g In re Zamora*, 2000 Bankr. LEXIS 947, at *6-8 (Bankr. D. Colo. March 6, 2000) (denying compensation for preparation time where the fee application was not significantly more complicated and time-consuming than normal invoices prepared at no charge to non-bankruptcy clients).

In regard to the use of 5% of overall compensation as a reasonable limit for compensation allowed for preparation of the fee application, Gigliotti concedes that *In re Bass*, 227 B.R. 103, 109 (Bankr. E.D. Mich. 1998), on which the bankruptcy court relied, supports the proposition. Gigliotti argues, however, that Judge Rhodes in the *Bass* case erroneously relied on *In re Coulter*, 805 F.2d 146 (6th Cir. 1986)[8].

---

[8] *In re Bass* actually cited *In re Atwell*, 148 B.R. 483, 491-92 (Bankr. W.D.Ky. 1993), which in turn cited *Coulter*, 805 F.2d 146, for the 5% limitation, but neither case explained

The reasoning from *Coulter* for the limitation in civil rights cases, "to insure that compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation," applies to bankruptcy cases for which, like civil rights cases, "the attorney fee case is not the case Congress expressed its intent to encourage." *Id.* at 151. In fact, the Bankruptcy Reform Act, 11 U.S.C. §§ 330(a) et al., is listed among federal statutes authorizing the award of attorney fees which the court specifically referred to in *Coulter*. *Id.* at 148-49, 152 app.A.  So Gigliotti's argument on this point is without merit.

Unlike this case, however, where the sole issue is preparation expenses, the concern in *Coulter* was mainly on limiting litigation expenses for trying attorney fee applications. *Id.* (stating the legislative intent behind attorney fee statutes was to encourage lawyers to bring civil rights cases, not attorney fee cases). *See also Atwell*, 148 B.R. at 492 (setting 5% limit as a general guideline, absent showing of exceptional circumstances, but noting that in most cases preparation of the fee application should be *much less than 5%* of the total requested fees) (emphasis added); *Garcia*, 317 B.R. at 826 (refusing to impose per se rule, but examining whether preparation time is disproportionate to the total fees allowed, and stating attorney and his paralegal should not have to "reinvent the wheel" for each and every fee application).

A review of Gigliotti's fee application shows no particularly detailed description of services. For example, entries such as "Letter to client" and "Phone call to client" provide no detail at all as to the purpose of the service, and could not possibly have

---

the applicability of *Coulter* to bankruptcy cases. 227 B.R. at 109.

taken much time to document. Furthermore, this Court finds no indication on the record of exceptional circumstances that would warrant straying from *Coulter*. The bankruptcy court is correct in reducing the amount of compensation for preparation of the fee application to no more than 5% of the total fees requested where the result of multiplying the reasonable hourly rate by the reasonable time expended is higher than that amount [9].

This Court assumes without finding that the lodestar amount is more than 5% of the total fees requested by Gigliotti. Therefor the Court finds the bankruptcy court did not err in limiting the time allowed for fee preparation to no more than 5% of the total fees requested.

**C. Addressing Objections to Compensation Requested in Fee Application**

As another issue on appeal Gigliotti listed, "Whether the Bankruptcy Court abused its discretion in not allowing Appellant to adequately address the Trustee's specific objections to Appellant's compensation, at Hearing on March 17, 2005." Gigliotti, however, failed to include any discussion or citation to authorities in the Appellate Brief to elaborate on this argument.

This Court notes the purpose of the fee application is to provide the detailed explanation of charges that would allow a bankruptcy court to perform a lodestar analysis regardless of whether or not any objections are filed. *E.g. In re Smith*, 256 B.R. 730, 737 (W.D. Mich. 2000) (stating the bankruptcy court has an obligation to examine the propriety of fees in order to prevent overreaching by attorneys and avoid waste of

---

[9] In most Chapter 13 cases, where the lodestar amount is less than 5% of the total fees requested, the lower amount is to be awarded. *See Atwell*, 148 B.R. at 492.

estate assets even if no objections are raised). Furthermore, the transcript from the hearing shows Ms. Skatikat was not prevented from presenting Gigliotti's concerns.

Particularly since Gigliotti has the burden of establishing the value and reasonableness of services in the fee application, *See Gulf Corp.*, 639 F.2d at 1207, the Court finds no abuse of discretion on this point.

## IV. Conclusion

For the reasons set forth above, the challenged March 25, 2005 Opinion is hereby AFFIRMED.

                                            s/George Caram Steeh
                                            GEORGE CARAM STEEH
                                            UNITED STATES DISTRICT JUDGE

Dated: July 28, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 28, 2005, by electronic and/or ordinary mail.

                                            s/Josephine Chaffee
                                            Secretary/Deputy Clerk